MERCHANTS' & PLANTERS' INS. CO. *et al.* v.

REEDER *et al.*

No. 5752.   Opinion Filed November 9, 1910.

Rehearing Denied December 7, 1915.

(153 Pac. 111.)

**CORPORATIONS—Purchase of Corporate Stock—Contract—Considera-
tion—Performance of Condition.** Where A. proposes to purchase
capital stock of an insurance company, a going concern, of the
par value of $5,000, for $7,500, provided payment may be made
by a promissory note for $3,500, due in three years, secured by
mortgage and a five-year lease valued at $4,000, and the insur-
ance company agrees to accept the offer, provided the insurance
department of the state will approve the lease as an asset of the
company, and the note and mortgage and lease are executed and
delivered to the company, but the insurance department refuses
to approve the lease, and A. refuses to modify his proposition and
accept stock for the amount of the note, **held,** that the contract
for the purchase of the stock was not complete, since the con-
dition upon which it was made was never performed, and A.
never became a stockholder in the company, and there was a
failure of consideration for the note and mortgage and lease,
and the same were subject to cancellation.

(Syllabus by Galbraith, C.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Action by C. L. Reeder and another against the
Merchants' & Planters' Insurance Company and another.
Judgment for plaintiffs, and defendants bring error. Af-
firmed.

*Davidson & Williams,* for plaintiffs in error.

*Martin & Moss,* for defendants in error.

Opinion by GALBRAITH, C.   This action was com-
menced in the trial court by C. L. Reeder and Jessica V.

Reeder against the Merchants' & Planters' Insurance Company and A. B. Harn, its receiver, to secure the cancellation and surrender of a certain promissory note for the sum of $3,500, executed by the Reeders to the insurance company, and a certain real estate mortgage given to secure the same, and for a decree canceling a certain five-year lease for apartments in the Reeder Building in Tulsa, Okla., executed by the Reeders to the insurance company, the ground for concellation being fraud and failure of consideration in securing the execution of the note, mortgage, and lease. The answer denied the fraud charge, and alleged that the note and mortgage and lease were executed and delivered in payment of a subscription of $5,000 of the capital stock in the Merchants' & Planters' Insurance Company at the agreed price of $7,500, and alleged the performance of the conditions of the contract of subscription on the part of the company and prayed, by way of affirmative relief, that the lease be sustained, and that the judgment be rendered in favor of the company for the amount of the note and interest, and for foreclosure of the mortgage given to secure the same. There was a trial to the court, a finding for the plaintiffs, and a judgment and decree entered canceling the note and mortgage and lease. To review this decree an appeal has been perfected to this court.

The cause is here presented on two separate and distinct theories. The plaintiffs in error's theory is that there was a contract of subscription or purchase of 5,000 shares of stock in the insurance company by Reeder, and this action is to rescind and cancel that contract, while the defendants in error present the case on the theory that there was no contract of subscription or purchase of the stock, but merely an offer to purchase on condition, and that the condition was never performed, and therefore there was

no contract, and an entire failure of consideration for the execution of the note, mortgage, and lease. The theory of the plaintiffs in error assumes the existence of the very fact put in issue by the pleadings, namely, whether or not the proposal or offer to purchase the stock was conditional or absolute, and the entire case of the plaintiffs in error is based upon a false premise, and therefore falls when the error upon which their entire theory of the case depends is disclosed. There is no doubt about the line of authorities presented in support of the argument on behalf of the plaintiffs in error being sound and well supported in reason and authority. There can be no doubt about the contention that if Dr. Reeder agreed to purchase the stock and gave the note and mortgage and lease in payment thereof, and if creditors dealt with the company in faith of this fact, and have extended credit to it on account thereof, after a lapse of an unreasonable time, and after the insolvency of the company had been adjudicated and a receiver appointed to administer upon its assets, he cannot rescind his contract and avoid the liabilities and responsibilities of a stockholder in the company. That is good doctrine, and sound both in law and in morals, but that is not the case presented by this record. That law is not applicable to this case, and does not govern in its disposition.

The defendants in error contend that they did not enter into a contract of subscription for capital stock; that they never were stockholders in the company; that they simply made a proposition to purchase the stock; and that this proposition was upon a condition which was never performed, and therefore they never became stockholders and never assumed the rights and liabilities of such in the

company. The trial court evidently found in favor of the theory of the defendants in error.

It is charged in the petition, in substance, that the Reeders, being deceived and misled by the false and fraudulent representations made by the agents of the company as to its solvency and prospects, proposed to purchase $5,-000 of the stock in the insurance company for the sum of $7,500, provided the company would accept in payment thereof their mortgage note for $3,500 and lease for $4,000; that the note and mortgage and lease were executed and delivered to the insurance company, but it refused to deliver the stock, because the insurance department of the State of Oklahoma refused to approve the lease for $4,000 as an asset of the company, and therefore the offer failed, the condition upon which it was made was not performed, and there was no consideration for the note, mortgage, and lease.

The officers of the insurance company were not present at the trial, and the testimony of Reeder as to the contract is not contradicted, and is, in part, as follows:

"A. I was solicited to take stock in the company.

"The Court: By whom? A. By Mr. Pattie and his representative. Q. Who were they, Doctor? A. At that time Mr. Capps and Mr. Oliphant. I finally consented to take $7,500.00 worth of stock. Q. Right there, Doctor, may I interrupt you? Were you taking that stock at par or at premium? A. What premium? Q. At a dollar and a half per dollar. A. On the representations made by Mr. Pattie, I was subscribing for that amount of stock in order that I might have sufficient interest to give attention to it. The contract of payment of the stock was a rental contract of five years, which would be a lease covering a period of five years at $4,000, and a real estate—a note secured by real estate security for the remainder, it being understood

that the note with real estate security would not be utilized nor cashed, but be held as one of the assets of the company. * * * Q. Wait; just there at that t.me that Mr. Pattie called your attention to the fact that the lease could not be accepted, was there any proposition made by him for the company to take your subscription for a smaller amount of stock and accept only the note and mortgage? A. That was suggested; that the stock would be delivered for the real estate mortgage. I refused to take a smaller amount of stock, for the reason that I have given in the beginning, that if I was to have any interest in the company, I wanted sufficient interest that I could give it attention, and I refused to accept any stock less than the amount subscribed for. Q. Mr. Pattie, on the other hand, refused to consummate the subscription on the terms you had originally talked and negotiated? A. Yes, sir. Q. Did you ever receive any stock in this company? A. I never received any stock, nor anything else. Q. Did you ever receive anything whatever from the company? A. Not a thing in the world. * * * Q. Was there any delay in the matter on account of any supposed effort on his part to obtain the consent of the insurance department to this contract that you were attempting? A. Of course, as to that, I don't know. Mr. Pattie was always going to do these things, and always was going to have a report presented to the insurance inspector, not only as to this condition, but other conditions of the company. In the meantime I was waiting for my stock to be delivered. Q. Was your understanding of the negotiations, the result of them, the effect and substance that you had regarding the subscription of this capital stock, that the subscription was incomplete until your stock was actually delivered to you and issued by the company, or that in the meantime the negotiations were merely pending? * * * A. Yes, sir; I felt all the time that the entire deal was incomplete until it was completed according to our original agreement. I subscribed for the stock, conditioned, first, that I could pay for it in the manner specified. I subscribed for it at that

time—is this answer admissible? Q. Yes; go ahead. A. I subscribed for it at that time in order that I could realize upon four years or five years of anticipated rentals, by adding to that security of real estate for $3,500, for stock of a value that I hypothecate and get the action on my money on the stock."

The testimony further shows that when Reeder was advised by the secretary of the insurance company that the insurance department refused to accept the lease as an asset of the company, he then demanded the return of the note and mortgage and lease. The testimony, in part, is as follows:

"Q. Did you ever demand at any time the return of the note, and the cancellation of the note and mortgage? A. Yes, sir; when the conversation mentioned at the time that the commissioner refused to accept the lease as their asset. At that time I demanded the cancellation of the real estate note and mortgage and let the deal fall through. Q. That was in the fall of 1909? A. Yes, sir. Q. At that time, Doctor, you demanded the cancellation of the note and mortgage, did you make any demand in regard to the lease when you understood you were not going to get your stock, the stock you had contemplated? A. Yes, if we weren't going to get the stock issued according to the subscription, if the insurance inspector wouldn't accept the lease for its face value, we would let the deal go entirely through, and we would make another arrangement as to rentals."

This is further corroborated by the evidence of witness Oliphant, who on direct examination testified as follows:

"Q. Do you know, then, after that obstacle had arisen in the transaction—did you know of a proposition by Mr. Pattie and Mr. Ramsey to Dr. Reeder to reduce the amount of stock for which he was subscribing and issue to him stock merely to cover the note and mortgage? A. Yes, sir.

Q. What was Dr. Reeder's attitude in regard to changing his subscription for the stock, what did he say about that? A. Well, he said he didn't want to make any change in the original agreement, he said a thousand, two or three thousand dollars in a business of that character would not be of sufficient moment to give the consideration to it that he would like to. In case everything went all right, he wanted the full amount of the capital stock purchased under the original agreement. Q. Did he say what he would do in the event he couldn't get the amount of capital stock he had contemplated in the first place as to canceling the deal or accepting a lesser amount? A. I don't know that he said that to me, but that Mr. Pattie said that to me; said that he wouldn't have a part, the $3,500 secured by the mortgage, unless he could secure the whole business, and I don't know whether Pattie—I think now I suggested an indemnifying bond."

The evidence clearly shows that Dr. Reeder proposed to purchase $5,000 of the capital stock of the insurance company, provided he could pay for it with the lease for $4,000 and the note for $3,500, and that the insurance company agreed to sell this stock for this price, provided the insurance department would approve the lease as an asset of the company, and that the insurance department refused to do this, and that then the company proposed to Dr. Reeder to accept $3,500 in stock for the note and mortgage, and that he refused to modify his proposition, and stated that he would take the $5,000 in stock or none; that his proposition to subscribe for this stock was conditional; and that the condition was never performed by the company. The rule as to conditional subscriptions for stock, as stated in section 590, Thompson on Corporations (2d Ed.), is as follows:

"A conditional subscription to the capital stock of a corporation may be said to be, as the term implies, a sub-

scription that is made upon some condition or contingency, and is intended to be binding and effectual only on the performance of such condition or the happening of such contingency. As otherwise defined, 'A conditional subscription is one on which payments can be enforced by the corporation only after the occurrence or after the performance by the corporation of certain things specified in the subscription itself.' A conditional subscription has been said to be but a continuing offer, which is final and absolute when accepted; all subscriptions becoming thus ultimately unconditional and absolute. * * * It is now very generally conceded by the authorities that a corporation, after its organization, may receive conditional subscriptions. * * *" (Section 591, Thompson on Corp. [2d Ed.])

See, also, sections 596-598, 600, 603, 610, 611, of Thompson, and the cases cited in the notes in support of the above text.

The evidence supports the finding of the trial court that the Reeders' subscription for the capital stock in the insurance company was conditional, and that the condition was never performed by the insurance company, and that therefore the contract of subscription or purchase was never completed, and Reeder never became a subscriber or stockholder in the insurance company, and there was a total failure of consideration for the execution and delivery of the note and mortgage and lease, and that therefore the same were subject to cancellation, as decreed by the trial court.

The judgment and decree of the trial court should be affirmed.

By the Court: It is so ordered.